UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALEXANDER JIMENEZ-GIL,<br><br>　　　　　　　Petitioner,<br>　v.<br><br>PAMELA BONDI, *et al.*,<br><br>　　　　　　　Respondents. | CASE NO. 2:26-cv-00002-GJL<br><br>ORDER GRANTING PETITION<br>FOR WRIT OF HABEAS CORPUS |

Petitioner Alexander Jimenez-Gil ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On January 2, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody. Dkt. 1. The Petition has been fully briefed. Dkts. 1, 7, 10.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition and **ORDERS** that Petitioner be **RELEASED** from detention immediately.

//

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela. Dkt. 1 at 5; Dkt. 8 at ¶ 4. Petitioner entered the United States on October 13, 2021, and was taken into immigration custody. *Id.* Petitioner stated his intention was to travel to Beaverton, Oregon, to reside and find employment. Dkt. 9-1 at 4. On October 14, 2021, United States Department of Homeland Security ("DHS") issued a warrant for Petitioner's arrest pursuant to Section 236 of the Immigration and Nationality Act ("INA") and a notice to appear before an immigration judge ("IJ") in Portland, Oregon, on December 14, 2021. Dkts. 9-2, 9-3. On October 15, 2021, ICE released Petitioner on an Order of Release and Recognizance ("OREC"). Dkt. 9-4.

Respondents allege Petitioner filed for an "immigration benefit" with United States Citizenship and Immigration Services ("USCIS") on May 13, 2024. Dkt. 7 at 5; Dkt. 8 at ¶ 7. On July 3, 2024, the IJ dismissed Petitioner's immigration benefit case without prejudice. *Id.* at ¶ 8; Dkt. 9-5. In October 2024, Petitioner filed a new application for asylum and withholding of removal. Dkt. 10-2. Respondents allege Petitioner's "immigration benefit application" was terminated by USCIS on November 19, 2025, although Respondents have not provided further documentation or justification for the alleged denial.[1] Dkt. 7 at 6; Dkt. 8 at ¶ 9.

---

[1] Petitioner's I-213 form from his arrest on November 20, 2025, states: "Criminal and immigration history indicated that [Petitioner] was in the United States in violation of immigration law as [his] prior TPS status was previously terminated on November 19, 2025 under ▇▇▇▇▇." Dkt. 9-6 at 3. Assuming "TPS" refers to "temporary protected status" within the immigration context, it is unclear why this information was redacted from the I-213 form. *See Sheikh-Elmi v. Nw. ICE Processing Ctr.*, No. 2:25-cv-00850-JNW, 2025 WL 1360299, at *3 (W.D. Wash. May 9, 2025) ("Temporary Protected Status, or TPS, is a form of humanitarian relief granted to eligible nationals of countries experiencing conditions that make it unsafe or impossible for their citizens to return home."). Respondents have not provided clarification on whether Petitioner's TPS status was the "immigration benefit" referenced in the Return and its exhibits.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 2

On November 20, 2025, ICE Enforcement and Removal Operations ("ERO") officers encountered Petitioner driving his registered vehicle during targeted enforcement operations in Portland, Oregon. Dkt. 9-6 at 3. ERO officers verified the registered owner of the vehicle by searching the vehicle's license plate. *Id.* When license plate records indicated Petitioner was the registered owner of the vehicle, ERO officers determined he was amenable to ICE enforcement operations based upon the alleged termination of Petitioner's "immigration benefit" on the previous day. Dkt. 7 at 6; Dkt. 9-6 at 3. Accordingly, ERO officers initiated a vehicle stop and took Petitioner into custody. *Id*

That same day, DHS issued a warrant for Petitioner's arrest and a notice to appear before an IJ on December 16, 2025. Dkts. 9-7; 9-8. Petitioner's release on OREC was cancelled thereafter.[2] On January 5, 2026, the IJ denied Petitioner's request for bond. Dkt. 8 at ¶ 13; Dkt. 9-9. In so doing, the IJ held that Petitioner was held pursuant to mandatory detention under 8 U.S.C. § 1225(b). *Id.* Petitioner remains detained at NWIPC. Dkt. 8 at ¶ 12.

## II.   PROCEDURAL HISTORY

Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2241 on January 2, 2026. Dkt. 1. On January 20, 2026, Respondents filed a Return submitting the "factual background as contained in the records of Petitioner Alexander Jimenez-Gil's immigration case, as well as the relevant detention authority." Dkt. 7 at 1. On January 7, 2026, Petitioner filed a Traverse. Dkt. 10.

The Petition asserts two grounds for habeas relief: (1) Respondents' erroneous application of 8 U.S.C. § 1225(b) to mandate Petitioner's continued detention violates the INA,

---

[2] The date of OREC revocation is unclear from the record. The declaration of Deportation Officer Reed states Petitioner's OREC was cancelled on November 20, 2025, but Respondents' brief states Petitioner's OREC was cancelled on January 16, 2026, while citing to Officer Reed's declaration. *See* Dkt. 8 at ¶ 11; Dkt. 7 at 6.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

and (2) Petitioner's re-detention without providing him an opportunity to be heard violates his constitutional guarantees of due process under the Fifth Amendment. Dkt. 6; *see also* Dkt. 11. As relief, Petitioner requests that this Court order Petitioner's immediate release from custody or, alternatively, order his release upon payment of an alternative bond amount. Dkt. 1 at 12. Plaintiff further requests an award of attorney's fees and costs under the Equal Access to Justice Act.[3] *Id.*

Having reviewed the briefing along with the record, the Court grants the Petition and orders that Petitioner be released from detention immediately.

### III.     LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Due process protections extend to all individuals within U.S. borders, including noncitizens, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Procedural due process demands meaningful notice and a genuine opportunity to be heard before the federal government infringes upon a liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). As noted by the parties, courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention cases, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards;

---

[3] To the extent the Petition seeks other relief, including the return of personal property and a prohibition on GPS ankle monitors after Petitioner's release, those requests have not been sufficiently briefed and are not included in the request for relief in the Traverse. *See* Dkt. 1 at 12–13, Dkt. 8 at 8.

1  and (3) the Government's countervailing interest, including fiscal and administrative burdens.

2  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also E.A. T.-B. v.*

3  *Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

**IV.    DISCUSSION**

**A.    Respondents' Authority to Re-Detain Plaintiff Without Due Process Generally**

At the outset, the Court notes the Return broadly states ICE "detains Petitioner pursuant to 8 U.S.C. § 1225 (b)(2)(A)," and then summarizes the statutory and regulatory framework for detention under the INA. However, Respondents do not apply the described framework to Petitioner's claims. Rather, the Return moves from the initial, generic legal analysis entitled "Detention Authorities" to the "Factual Background," and then directly to the "Conclusion" section, without demonstrating a discernible effort to apply the law to the specific facts of Petitioner's case. *See* Dkt. No. 7. "The Petition is thus functionally unopposed." *See Roca v. Scott*, No. 2:25-cv-02551, 2026 WL 60412, at *3 (W.D. Wash. Jan. 8, 2026); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075, 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6, 2025) (noting the Government brief identifies the standard without an argument section, thus "appear[ing] to concede that there is no justification" for re-detention).

To the extent Respondents claim Petitioner is subject to mandatory detention pursuant to § 1225(b), courts have broadly and repeatedly rejected this argument. *See, e.g., Herrera Gomez v. Wamsley*, No. 2:25-cv-02642-JNW, 2026 WL 279966, at *2 (W.D. Wash. Feb. 3, 2026)*; P.T. v. Hermosillo*, 2025 WL 3294988, at *4 n.1 (W.D. Wash. Nov. 26, 2025); *A.C.J. v. Hermosillo*, , 2025 WL 3907144, at *3 n.2 (W.D. Wash. Dec. 30, 2025), *report and recommendation adopted*, No. 2:25-cv-02486-DGE-MLP, 2026 WL 73857 (W.D. Wash. Jan. 9, 2026); *Manuel v. Hermosillo*, 2025 WL 3690778, at *2 (W.D. Wash. Dec. 10, 2025), *report and recommendation*

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 5

*adopted*, No. 2:25-cv-2353-TL-MLP, 2025 WL 3697277 (W.D. Wash. Dec. 19, 2025); *see also Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1324 (W.D. Wash. 2025) (rejecting the Government's recently adopted position that Section 1225(b) applies to any applicant for admission).

Much like the petitioner in *Herrera Gomez*, Petitioner was re-detained "while residing in the United States under an OREC and with the Government's permission, long after" his initial arrival in this country. 2026 WL 279966, at *2. "The Government did not subject [Petitioner] to mandatory detention under Section 1225(b)(1) when [he] arrived at the border in 2023; instead, it released [him] to live in the United States, 'pending the outcome of [his] removal proceedings' under Section 1226(a). Under these circumstances, [Petitioner's] detention falls within Section 1226(a)'s discretionary detention scheme, not Section 1225(b)'s mandatory detention provisions." *Id.* (citing *Jennings*, 583 U.S. at 289; *Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, --- F. Supp. 3d ----, 2025 WL 2841574, at *9 (W.D. Wash. Oct. 7, 2025) (internal citations omitted)); Dkt. 9-4.

Moreover, this Court agrees with other courts in this District that procedural due process requirements apply regardless of whether Petitioner is detained under Section 1225(b) or 1226(a). *Id.* (citing *Flores Torres v. Hermosillo*, No. 2:25-cv-02687-LK, 2026 WL 145715, at *2, 7–8 (W.D. Wash. Jan. 20, 2026) (holding that noncitizen detained under Section 1225(b), released under Section 1182(d)(5)(A), and subsequently re-detained had due process right to notice and opportunity to be heard before revocation of release)); *Sarwari v. Wamsley*, No. 2:26-cv-00121-TL, 2026 WL 279968, at *3 (W.D. Wash. Feb. 3, 2026) (citing *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) ("[T]he fact that the Government may

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

1  believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the
2  detention in a manner that comports with due process.")).
3        Respondents also acknowledge recent decisions requiring a pre-deprivation hearing to
4  determine if that noncitizen is a flight risk or a danger to the community prior to revoking an
5  OREC, but suggest the courts erroneously construed the regulatory requirements. Dkt. 7 at 5
6  (citing *E.A.T.-B.*, 2795 F. Supp. 3d at 1323; *Ramirez Tesara*, 800 F. Supp. 3d at 1136–38).
7  However, courts in this District and others have recently found pre-detention hearings required in
8  the context of various forms of release based upon due process. *Id*. at 6 n. 1 (citing *E.A.T.-B.*, 795
9  F. Supp. 3d at 1324 (revocation of an OREC requires a pre-detention hearing to determine if that
10  noncitizen is a flight risk or a danger to the community); *Guzman v. Andrews*, No. 1:25-cv-
11  01015-KES-SKO (HC), 2025 WL 2617256, at *2 (E.D. Cal. Sept. 9, 2025) (pre-detention
12  hearing required prior to revocation of the petitioner's release on bond); *Pinchi v. Noem*, 792 F.
13  Supp. 3d 1025, 1038 (N.D. Cal. 2025) (pre-detention hearing required prior to revocation of the
14  petitioner's release on her own recognizance)); *see also Chogllo Chafla v. Scott*, 804 F. Supp. 3d
15  247, 263 (D. Me. 2025) (requiring a custody re-determination before an immigration judge prior
16  to re-arresting a noncitizen); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). In
17  doing so, courts "focus not on the Government's claimed authority to detain, but the process by
18  which Petitioner was detained." *P.T.*, 2025 WL 3294988, at *4 n.1. Respondents' misplaced
19  reliance on regulatory authority to justify Petitioner's re-detention fails to recognize the
20  underlying constitutional considerations guiding courts in these decisions. *See*, *e.g.*, *Vargas v.*
21  *Jennings*, 2020 WL 5517277, at *2 (N.D. Cal. Sep. 14, 2020) (that a petitioner is not entitled by
22  statute or regulation to a pre-arrest hearing does not bear on whether a hearing is required for
23  procedural due process).
24

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

Regardless of Respondents' statutory and regulatory obligations, the Government must still comply with constitutional requirements of due process. *See Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) ( "[T]he fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."). Accordingly, the Court turns to Petitioner's due process claim.

**B.     Petitioner's Re-Detention Here Does Not Comport with Fifth Amendment Due Process**

Petitioner applied the *Mathews* factors in his briefing to support his procedural due process claim, as have other Washington district courts in similar immigration re-detention cases. Dkt. 1 at ¶ 54; Dkt. 8 at 9–12; *Velazquez v. Wamsley*, No. 2:25-cv-02641-JHC, 2026 WL 84223, at *2 n.2 (W.D. Wash. Jan. 12, 2026) (collecting cases). Notably, Respondents do not refer to Petitioner's procedural due process claim, the *Mathews* factors, or the constitutional protections of the Fifth Amendment in their Return. This failure can only be interpreted one way:

> The Court is left to assume that the Government has refrained from making a legal argument because no well-founded argument exists. As in any other case, the Court relies on the parties to present arguments in support of their position. Where the Government elects not to substantively oppose a habeas petition, judicial economy would be better served by stipulating to the requested relief.

*Roca*, 2026 WL 60412, at *3 n.3. Despite the Government's limited Return, the Court will fully consider Plaintiff's procedural due process claim by analyzing each *Mathews* factor in turn.

    1.     <u>Petitioner's Liberty Interest at Stake</u>

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Petitioner's interest in not being detained is "the

most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee"). That Petitioner was re-detained and remains in custody months later undoubtedly presents a deprivation of Petitioner's interest in his liberty.

Such interest was only strengthened by the Government's decision to release him from immigration custody in October 2021. *See Velazquez*, 2026 WL 84223, at *4 (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)). For more than four years, Petitioner lived in the United States without incident. During this time, he resided in the community and complied with the conditions of his release.[4] "His release thus allowed him to gain[ ] a foothold in the United States and develop ties in this country, thereby strengthening his constitutional right to due process. In revoking Petitioner's release, the Government has undeniably inflicted a grievous loss of Petitioner's liberty, thereby depriving him of a core private interest protected by the Due Process Clause." *Id.* at *4 (internal quotations and citations omitted).

For these reasons, the Court finds Petitioner's interest in his liberty is constitutionally protected here. Accordingly, the first *Mathews* factor favors Petitioner.

//

---

[4] Respondents have not offered any evidence, or specific allegations, that Petitioner violated the conditions of his release.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

### 2. Risk of Erroneous Deprivation of Petitioner's Liberty

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and the probable value, if any, of additional procedural safeguards. *Mathews*, 424 U.S. at 335. Here, the Court finds a high risk of erroneous deprivation of Petitioner's liberty interest.

Courts in this District have found factual disputes concerning the Government's justification for re-detention should be adjudicated *before* and not following such action. *See Yildirim*, 2026 WL 111358, at *4. However, it remains unclear from the record why Petitioner was re-detained. There is no indication Petitioner violated the terms of his release. Respondents allege Petitioner's "immigration benefit application was terminated" the day prior to his arrest, but they have provided no meaningful documentation or explanation for this decision. *See* Dkt. 7 at 5; Dkt. 8 at ¶ 9. Similarly, it is unclear whether Petitioner's October 2024 application for asylum remains pending. *See* Dkt. 10-2.

Respondents rely upon standard briefing language to broadly assert that there is not any identifiable statutory requirement that the Government provide noncitizens with a pre-detention hearing. Dkt. 7 at 4 (citing *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 582 (2022)). However, as discussed above, Respondents' position simply ignores the constitutional dimensions of this action, which entirely deprives Petitioner of his liberty without giving him notice of the reasons for his re-detention or the opportunity to refute those reasons at a pre-detention hearing. *S.S. v. Hermosillo*, No. 2:25-cv-2684-MLP, 2026 WL 183565, at *3 (W.D. Wash. Jan. 23, 2026); *Velazquez*, 2026 WL 84223, at *5. The probable value of notice and a pre-detention hearing is particularly high under these circumstances.

Given Petitioner's undisputed compliance with the conditions of his release coupled with his lack of notice and opportunity to respond, the Court finds the second *Mathews* factor also favors Petitioner.

### 3. Government Interest in Civil Detention

In the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without a hearing. *Mathews*, 424 U.S. at 335.

As discussed above, Respondents have failed to articulate a legitimate countervailing interest to justify Petitioner's re-detention in this case without minimal due process. *See Ramirez Tesara,* 800 F. Supp. 3d at 1137 (finding third factor favors petitioner where Government cites no legitimate interest for detention without a hearing or evidence that a pre-detention hearing would impose an administrative or financial burden). Respondents have not challenged Petitioner's compliance with any of the terms of his parole, nor suggested Petitioner poses a significant flight or public safety risk.

As a result, the Court concludes the Government's interest in re-detaining a previously released, compliant noncitizen without a hearing is low. *See Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *8 (W.D. Wash. Oct. 7, 2025); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Thus, the third *Mathews* factor weighs in Petitioner's favor.

In sum, all three *Mathews* factors favor Petitioner. The Court finds that Petitioner had a protected liberty interest in his continued release from custody and that due process requires Petitioner to receive sufficient notice and an opportunity to respond *before* he can be re-detained. *See E.A. T.-B*, 795 F. Supp. 3d at 1324 (finding a post-deprivation bond hearing cannot serve as an adequate safeguard because it is after the fact and cannot prevent an erroneous deprivation of

liberty) (citation omitted). The appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

## V.   CONCLUSION

For the foregoing reasons, the Court **ORDERS**:

(1) Petitioner's habeas Petition, Dkt. 1, is **GRANTED**;

(2) Respondents shall release Petitioner from custody immediately under the conditions of his prior release;

(3) Respondents may not re-detain Petitioner without advance notice and a pre-detention hearing before a neutral decisionmaker;

(4) Respondents shall file a declaration within **24 HOURS** of the issuance of this Order, confirming that Petitioner has been released from custody and providing the date and time of his release; and

(5) The Court will entertain any post-judgment motion for attorney's fees, as requested in the Petition.

Dated this 13th day of February, 2026.

Grady J. Leupold
United States Magistrate Judge